IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TIMOTHY RICHARDS,<br><br>        Plaintiff,<br><br>v.<br><br>THE KROGER COMPANY,<br><br>        Defendant. | 1:16-cv-944-WSD |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Timothy Richards's ("Plaintiff") Motion for Summary Judgment [10] and Defendant The Kroger Company's ("Defendant") Motion for Summary Judgment [16]. Also before the Court are Plaintiff's Motions to Withdraw Admissions [13], [14].

## I.  BACKGROUND

### A.  Facts

On or around August 24, 2015, Plaintiff, a black man, and his fiancée, Elena Peichinova, a white woman, were present at Kroger Store No. 390 in Alpharetta, Georgia (the "Kroger Store"). (Def.'s Statement of Undisputed Material Facts [16.2] ("DSUMF") ¶ 1; Pl's Resp. [17] ¶ 1). Plaintiff and Ms. Peichinova attempted to leave a bag behind the clerk's podium in the self-check-out area of the

store.  (DSUMF ¶ 2).  Plaintiff claims that, in the past, he received permission to leave the bag there.  (Pl.'s Resp. ¶ 2).  On this occasion, the employee at the self-check-out area asked Plaintiff, allegedly in a hostile manner, "whose bag is it?" (Aff. Of Elena Peichinova [17] at 30).  Jason Satterfield, Unit Manager of the store, responded after Mr. Satterfield overheard Plaintiff being verbally abusive to the Kroger Store employee.  (DSUMF ¶ 3).

Plaintiff's conduct caused a disturbance in the store, and Mr. Satterfield asked Plaintiff to leave.  (DSUMF ¶¶ 5, 6).[1]  Plaintiff claimed he was asked to leave the store because of his race.  (DSUMF ¶ 7).  Mr. Satterfield explained that the request to leave was not due to race, rather it was due to the encounter and Plaintiff's interactions with the Kroger employees.  (DSUMF ¶ 7).  Mr. Satterfield

---

[1] Plaintiff claims he was not verbally abusive and that he did not cause a disturbance.  To support this claim, Plaintiff relies on an email correspondence between Plaintiff and Glynn Jenkins, Public Relations Director of Defendant's Atlanta Division.  (See [17] at 9, 26-27).  The email contains Plaintiff's unsworn account of the events of August 24, 2015.  Plaintiff claims that "[t]he Defendant has made no mention of the Plaintiff's [allegedly disruptive] actions in any of the email correspondence between the Defendant and Plaintiff."  (Pl.'s Resp. ¶¶ 4, 5).  In the email conversation, Mr. Glynn responded to Plaintiff's account with an apology for Plaintiff's recent experience at the Kroger Store.  ([17] at 26).  This evidence does not support Plaintiff's contention that he was not verbally abusive.  Ms. Peichinova's Affidavit also does not contain any information to dispute that Defendant's conduct caused a disturbance or that Plaintiff was verbally abusive to Kroger Store employees.

took offense to Plaintiff's accusations of racial bias. (Peichinova Aff. [17] at 30). Plaintiff eventually called the Johns Creek Police Department. (DSUMF ¶ 8; Pl.'s Resp. ¶ 8). When the police arrived, Plaintiff left. (DSUMF ¶ 9; Pl.'s Resp. ¶ 9).

On or around October 18, 2015, Plaintiff again was present at the Kroger Store. (DSUMF ¶ 10; Pl.'s Resp. ¶ 10). While waiting at the self-check-out area, Plaintiff asked that another register be opened for him. (DSUMF ¶ 11; Pl.'s Resp. ¶ 11). Plaintiff was informed another register could not be opened. Plaintiff, using his cellular telephone, began to film Kroger Store employees and customers. (DSUMF ¶ 12; Pl.'s Resp. ¶ 12). Plaintiff's behavior was disruptive and he was reported to be "causing a scene." (DSUMF ¶ 13; [20.1] at 7). Lo Presti, a Kroger Store manager, approached Plaintiff, offered to pay for his groceries, and asked Plaintiff if there was a problem. (Pl.'s Resp. ¶ 14). After Plaintiff replied he did not have a problem, Mr. Presti walked away and called the police. (DSUMF ¶ 14; Pl.'s Resp. 14). The police responded to the incident, and issued Plaintiff a trespassing warrant banning him from the Kroger Store. (See DSUMF ¶¶ 14-16; Pl.'s Resp. ¶¶ 15-16). During the encounter with the officers, Plaintiff gave his telephone to Ms. Peichinova, who continued recording the incident. (Peichinova Aff. [17] at 31). Ms. Peichinova was not issued a trespassing warrant.

B.	Procedural History

On March 24, 2016, Plaintiff, proceeding *pro so*, filed his Complaint [1], alleging Defendant, in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"), denied Plaintiff the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations on the basis of his race.  Plaintiff seeks $400,000 in damages and an order barring Defendant from engaging in future discriminatory conduct toward non-white customers.  (Compl. ¶¶ 10-11).

On June 16, 2016, Plaintiff filed his Motion for Summary Judgment. Plaintiff failed to include with his Motion a statement of undisputed material facts. Plaintiff also failed to include a memorandum of law citing supporting authority.

On July 7, 2016, Defendant filed its response to Plaintiff's Motion. Defendant argues Plaintiff's Motion should be denied because Plaintiff's Motion is not accompanied by a memorandum of law, in violation of Local Rule 7.1, NDGa. Defendant also argues Plaintiff's Title II claim fails, because Plaintiff did not present evidence that Defendant discriminated against him on the basis of race or that Defendant's legitimate, nondiscriminatory reason was pretext for unlawful discrimination.  Defendant also argues that, because Plaintiff failed to respond to Defendant's requests for admission, the requests for admission are deemed

admitted. On July 20, 2016, and August 1, 2016, Plaintiff filed separate Motions to Withdraw Admissions, seeking to file his responses to Plaintiff's requests for admission.

On August 2, 2016, Defendant filed its Motion for Summary Judgment. In his response brief, Plaintiff includes his Statement of Undisputed Material Facts and his response to Defendant's Statement of Undisputed Material Facts.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not present evidence in a form

necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary

verdict."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotations omitted).

Though a *pro se* filing must be liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."  Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

    B.    Analysis

        1.    McDonnell Douglas Burden-Shifting Framework

Plaintiff claims Defendant violated Title II by discriminating against him on the basis of his race.  Title II provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  Title II requires a plaintiff to prove intentional discrimination on the basis of race.  "The same burden-shifting analysis used in the employment context

under McDonnell Douglas[2] is also applied to claims under Title II." Solomon v. Waffle House, Inc., 365 F. Supp. 2d 1312 (N.D. Ga. 2004); accord Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308, 1321 (S.D. Fla. 2004).

"[T]o prove a prima facie case of 'disparate treatment' discrimination, a plaintiff may prove his or her case through (1) direct evidence of discrimination, (2) pattern and practice evidence of discrimination, or (3) circumstantial evidence of discrimination." Afkhami, 305 F. Supp. 2d at 1320 (citing Aurel v. Sch. Bd. of Miami-Dade Cty. Pub. Sch., 261 F. Supp. 2d 1375, 1377 (S.D. Fla.2003)). Direct evidence is "'evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption. Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence.'" Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997)). "Under the pattern and practice theory of discrimination, a plaintiff must provide evidence sufficient to establish that impermissible discrimination was the defendant's standard operating procedure through a combination of historical, anecdotal, or statistical evidence." Afkhami, 305 F. Supp. 2d at 1320-21. Circumstantial

---

[2]   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

evidence of intentional discrimination is that which "suggests, but does not prove, a discriminatory motive . . . ." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).

Plaintiff does not present any direct evidence of racial discrimination. Plaintiff does not provide any evidence to show that any Kroger Store employee explicitly asked Plaintiff to leave the store because of his race. Plaintiff also does not present evidence to show a pattern or practice of discrimination. Plaintiff only presents evidence that 9.7% of the population of the Johns Creek area is black. This evidence, standing alone, is not a "combination of historical, anecdotal, or statistical evidence" to support that it was Defendant's standard operating procedure to discriminate on the basis of race. See Afkhami, 305 F. Supp. 2d at 1320-21.

Claims of discrimination relying on circumstantial evidence are evaluated using the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Maddox-Jones v. Bd. of Regents of Univ. Sys. Of Ga., 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam). To establish a prima facie case of unlawful discrimination under Title II, a plaintiff must show that he (1) is a member of a protected class; (2) attempted to contract for services and afford himself the full benefits and enjoyment of a public accommodation; (3) was

denied the full benefit or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside plaintiff's protected class who received full benefits or who were treated better than plaintiff.  Solomon, 365 F. Supp. 2d at 1331.

Where a plaintiff establishes a prima facie case of racial discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against the plaintiff.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing McDonnell Douglas, 411 U.S. at 802).  "'[T]o satisfy this intermediate burden, the [defendant] need only produce admissible evidence which would allow the trier of fact rationally to conclude that the [adverse] decision had not been motivated by discriminatory animus.'"  Id. (quoting Burdine, 450 U.S. at 257).  "'[T]he defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  Id. (quoting Burdine, 450 U.S. at 254-55).  The defendant's burden in the rebuttal stage is "'exceedingly light.'"  Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting Perryman v. Johnson Prods Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983)).

Where a prima facie case is rebutted, Plaintiff has the opportunity to show that Defendant's stated reasons are pretexts for discrimination.  Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012).  Plaintiff must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotations omitted).  "[A] reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false *and* that discrimination was the real reason."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).

Assuming, only for the purposes of this Order, that Plaintiff provides sufficient evidence to establish a prima facie case of Title II discrimination, the Court finds Plaintiff fails to present evidence to show Defendant's legitimate, non-discriminatory reasons are pretexts for discrimination.  Defendant meets its "exceedingly light" burden to rebut Plaintiff's prima facie case because it provides evidence that would allow the trier of fact to conclude that Defendant's actions were taken because Plaintiff was being disruptive.  (See DSUMF ¶¶ 3, 5, 6, 13).  Defendant shows that, on August 18, 2015, Plaintiff became verbally abusive to a Kroger Store employee, and that his conduct caused a disturbance in the store.

(See id. ¶¶ 3, 5). Defendant then presents undisputed evidence that Plaintiff returned to the store on October 18, 2015, where he began to film Kroger Store employees and customers and again was disruptive and refused to cooperate with the Kroger Store employees. (Id. ¶¶ 12, 13; Pl.'s Resp. ¶ 12).

Plaintiff claims he was not verbally abusive and that he did not cause a disturbance on either occasion. To support this claim, Plaintiff relies on an email exchange between Plaintiff and Glynn Jenkins, Public Relations Director of Defendant's Atlanta Division. (See [17] at 9, 26-27). The email contains Plaintiff's unsworn account of the events of August 24, 2015. Mr. Jenkins's response appears to be a standard response containing an apology for Plaintiff's "recent experience" at the Kroger Store. (Id. at 26). Plaintiff next relies on an email exchange between Plaintiff and Kroger customer service employee Steven Donavon, in which Mr. Donavan asked Plaintiff to meet in person or have a phone conversation to discuss Plaintiff's concerns. (Id. at 40). Plaintiff claims that "[t]he Defendant has made no mention of the Plaintiff's [allegedly disruptive] actions in any of the email correspondence between the Defendant and Plaintiff." (Pl.'s Resp. ¶¶ 4, 5). That Defendant's corporate representatives, in their email communications responding to Plaintiff's complaints, did not mention that Plaintiff was disruptive does not support that Plaintiff was not, in fact, disruptive during the

two occasions in question.  The affidavit of Ms. Peichinova, Plaintiff's fiancée, also does not contain facts to rebut that Plaintiff was verbally abusive to Kroger Store employees or that he was generally disruptive.  Her affidavit confirms that Plaintiff began recording the events in the Kroger Store.  That Plaintiff claims his recording was legal under Georgia law does not support that his conduct was not disruptive, and does not support that discrimination was the real reason Defendant called the police and barred Plaintiff from the Kroger Store.

That Ms. Peichinova did not receive a trespassing warrant also does not undermine Defendant's legitimate, non-discriminatory reason.  Unlike Plaintiff, there is no evidence to show Ms. Peichinova was disruptive or involved in a verbal confrontation of any kind with Kroger Store employees.  The only reasonable inference from the evidence is that Kroger Store employees called the police and sought a trespassing warrant because of Plaintiff's disruptive conduct.

Plaintiff thus fails to present evidence to show "such weaknesses, implausibilities, inconsistencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them

13

unworthy of credence." Combs, 106 F.3d at 1528. Defendant's Motion for Summary Judgment is granted.[3]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Timothy Richards's Motion for Summary Judgment [10] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant The Kroger Company's Motion for Summary Judgment [16] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Withdraw Admissions [13], [14] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 22nd day of November, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court concludes summary judgment is warranted on the evidence presented, the Court is not required to address Defendant's additional argument that, because Plaintiff failed to respond to Defendant's requests for admission, the requests for admission are deemed admitted. Defendant's Motions to Withdraw Admissions are thus denied as moot.